**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 22-10032 |
| | ) | |
| JUSTIN RANDOLPH and STEPHANIE SYLVERNE, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| PRAVATI SPV II, LLC, | ) | Adv. Case No. _____ |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUSTIN RANDOLPH and STEPHANIE SYLVERNE, husband and wife, d/b/a Law Office of Justin G. Randolph, | ) | Honorable Judge Deborah L. Thorne |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ADVERSARY COMPLAINT TO DETERMINE
DISCHARGEABILITY OF DEBT**

For its Adversary Complaint against Justin Randolph ("Randolph") and Stephanie

Sylverne ("Sylverne" and with Randolph, "Debtors" or "Defendants"), Plaintiff Pravati SPV II,

LLC ("Pravati" or "Plaintiff") respectfully alleges as follows:[1]

---

[1] Pravati reserves the right to amend this Adversary Complaint to include additional causes of action, including without limitation, nondischargeability for willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6), in the event that the Debtors' bankruptcy case is converted to Chapter 7 or 11.

AFDOCS:26549994.1

## I.

## THE PARTIES

1.    Pravati is a duly formed Delaware limited liability company with its seat of business in Maricopa County, Arizona.

2.    At all times relevant hereto, Pravati was a leading provider of commercial funding solutions to lawyers and law firms.

3.    At all times relevant hereto, Randolph was an attorney licensed to practice law and residing in the State of Illinois.

4.    At all times relevant hereto, Sylverne was the spouse of co-debtor Randolph.

## II.

## JURISDICTION AND VENUE

5.    Pravati realleges and incorporates herein by reference each and every allegation contained in this Adversary Complaint.

6.    On September 1, 2022 (the "Petition Date"), Randolph and his spouse Sylverne filed with this Court a Petition for chapter 13 relief, the United States Bankruptcy Court for the Northern District of Illinois, Case No. 22-10032 (the "Bankruptcy Case").

7.    This adversary proceeding arises in and relates to the Bankruptcy Case.

8.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

9.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

10.    This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b), and the Court can and should enter final judgment.

AFDOCS:26549994.1

**III.**

**FACTUAL BACKGROUND**

11.     Pravati realleges and incorporates herein by reference each and every allegation contained in this Adversary Complaint.

12.     Debtors are a litigious attorney and his spouse who, from 2004 to 2019, operated a law firm, Law Office of Justin G. Randolph, as a sole proprietorship.

13.     Justin S. Holloway ("Holloway") practiced law along with Debtors at the Law Office of Justin G. Randolph.

**A.     The Funding Agreement.**

14.     In 2017, Debtors applied for and received net funding from Pravati of $183,960, pursuant to their Law Firm Legal Funding Contract & Security Agreement dated December 21, 2017 (the "Agreement").

15.     In the initial funding application to Pravati, Debtors were asked "Does the firm owe any taxes?" and they checked the box stating "No."

16.     In the initial funding application to Pravati, Debtors were asked "Do you [personally] owe taxes or have any pending claims or judgments against you?" and they checked the box stating "No."

17.     In exchange for the capital infusion, the Agreement gave Pravati a lien against and right to payment from Debtors' accounts receivables and payment intangibles ("Proceeds").

18.     As found by the Arbitrator and as provided in Section 6 of the Agreement: (1) Pravati would be entitled to payment of 50% of the Proceeds from Debtors' cases until all amounts owing were paid in full; and (2) upon a default by Debtors, Pravati would be entitled to payment of 100% of the Proceeds from the Debtors' cases.

AFDOCS:26549994.1

19.     The Agreement also provides at § 5 that "Law Firm also understands, acknowledges and agrees that Law Firm shall not assign, dispose of, encumber, or pledge as security or otherwise all or any portion of the Proceeds or Collateral, or any other interest in any Case in the Portfolio of Cases or other Related Proceedings unless and until Pravati is first unconditionally and finally paid in full[.]"

20.     In addition, § 5 of the Agreement provides that "In the event Law Firm is engaged to represent or otherwise acquires any additional future Cases or Related Proceedings, Law Firm shall revise Schedule B to set forth each such newly acquired Cases or Related Proceedings and shall notify Pravati of the revisions to Schedule B in a timely manner." (Emphasis removed).

21.     Section 17 of the Agreement provides that:

a.      "Law Firm stipulates that no amounts required to be paid to Pravati pursuant to this Agreement are, and shall not be, subordinated to any other liens or claims of any other party."  Agreement at § 17(d).

b.      "All current liens, assignments, encumbrances or security interest of any kind or nature in or relating to the Proceeds, Collateral, or any other similar rights or assets relating to the Portfolio of Cases or other Related Proceedings are listed on Schedule B." (Emphasis removed).  Agreement at § 17(e).

c.      "Law Firm has paid all of its federal, state, and local taxes through the date of execution of this Agreement or has made provisions for the payment."  Agreement at § 17(g).

d.      "All financial disclosures made to Pravati are true, accurate, complete and fairly characterize the financial position of Law Firm."  Agreement at § 17(i).

AFDOCS:26549994.1

22.      In Schedule D of the Agreement, Debtors were asked to identify all existing encumbrances and liens against them.  Under penalty of perjury, Debtors avowed that they had "None."

23.      However, despite these numerous representations, at the time Debtors entered into the Agreement, Debtors owed taxes and other debts to governmental entities, including income taxes and unemployment insurance tax to the State of Illinois.

24.      In addition, at the time they entered the Agreement, Debtors had governmental and tax liens against them, including two income tax liens and two unemployment insurance tax liens placed against them by the State of Illinois.

25.      Following execution of the Agreement, Defendants settled cases and collected Proceeds subject to Pravati's lien, but then misappropriated and kept all of the money for their own use.

26.      Following execution of the Agreement, Defendants obtained hundreds of thousands of dollars in Proceeds, but, despite admitting on various occasions that Debtors did in fact owe money to Pravati, Debtors failed to revise Schedule B of the Agreement or ever remit one penny to Pravati.

27.      To this day, Defendants have wrongfully retained funds advanced by Pravati ***and*** have dispossessed Pravati of the receivables against which the advance was taken—at least hundreds of thousands, and perhaps millions, of dollars.

28.       Upon a default under the Agreement, Debtors' obligations would become full recourse as against all of Debtors' other assets, and Pravati's security interest would attach to all of Debtors' assets.

AFDOCS:26549994.1

Case 22-00190   Doc 1   Filed 11/28/22   Entered 11/28/22 20:49:30   Desc Main
Document      Page 6 of 15

29.     On April 2, 2019, Pravati gave written notice to Debtors of occurrences of breach and inaccurate representations.

30.     On the same day, April 2, 2019, Defendants formed Randolph & Holloway LLC ("Randolph & Holloway").

31.     After forming Randolph & Holloway on April 2, 2019, Defendants appeared in Debtors' cases on behalf of Randolph & Holloway.

32.     Randolph & Holloway is operated by the same two attorneys formerly operating Law Office of Justin G. Randolph—namely, Randolph and Holloway.

**B.     Pravati's Arbitration Award.**

33.     Pursuant to the dispute resolution clause in the Agreement, Pravati on May 8, 2019 commenced arbitration against Debtors before the American Arbitration Association ("AAA") in Case No. 01-19-0001-4311 (the "Arbitration").

34.     Following the first evidentiary hearing in the Arbitration, the Arbitrator on October 22, 2019 issued a reasoned *Final Award of Arbitrator* ("Award") finding Debtors liable to Pravati for, *inter alia*, compensatory damages for breach of contract, fraud, and conversion, in the amount of $183,960, plus interest.

35.     Debtors challenged the Award in the Arizona Superior Court in and for Maricopa County ("Arizona Superior Court") in Case No. CV2019-014865 (the "Confirmation Case"). Ultimately, on October 8, 2020, the Arizona Superior Court ordered Pravati's fraud and conversion claims to be reheard in the Arbitration.

**C.     Randolph's Scorched Earth Litigation.**

36.     Subsequently, between the remand and the second evidentiary hearing on May 5, 2021, Debtors subjected Pravati to a barrage of ancillary litigation and arbitration.  For instance,

Debtors on March 23, 2021 filed what was their second Motion to Dismiss in the Arbitration, which they misleadingly characterized as a "Motion to Terminate." Debtors therein made a host of arguments irrelevant to Pravati's fraud and conversion claims, including that it was criminal conduct for Pravati to send money to Debtors in the first place, and that Pravati was not licensed as a "finance lender or broker" in the State of California, which state has no connection to Debtors' funding.

37.     On April 22 and 23, 2021—just days before the May 5, 2021 second evidentiary hearing in the Arbitration—Debtors filed two nearly identical frivolous lawsuits against Pravati, its fund manager (Pravati Capital, LLC), certain individual Pravati employees, a Pravati investor, and others. The suits made baseless allegations such as participation in organized crime and/or a civil fraud conspiracy ring.

38.     Around this time, Debtors undertook to represent a different bad-actor adversary in litigation against Pravati.

39.     Notwithstanding all the collateral litigation created by Debtors, the second evidentiary hearing would ultimately occur in the Arbitration and result in AAA's issuance on June 7, 2021 of the Second Amended Final Award.

40.     The Second Amended Final Award finds, *inter alia*: (1) Pravati had a valid and perfected security interest in Debtors' accounts receivables and general intangibles; (2) Pravati had demonstrated that Debtors converted at least $119,500 in collateral subject to Pravati's lien.

**D.     Perfection of Pravati's Security Interest.**

41.     On January 3, 2018, Pravati filed a UCC-1 financing statement with the Illinois Secretary of State against "all accounts, account receivable, and general intangibles . . . and all

- 7 -

fees, distributions, payments, proceeds, . . . and other benefits which Debtor now is or may hereafter become entitled to receive." This UCC-1 also referenced certain cases by name.

42.     On August 30, 2019, Pravati recorded a UCC-1 financing statement against "[a]ll assets now owned, or hereafter acquired" by Randolph.

43.     On October 28, 2021, Pravati filed a UCC-3 amendment to make clear that Pravati's lien applies to both Sylverne and Randolph, pursuant to the *Second Amended Final Award of Arbitrator* dated June 7, 2021 ("Second Amended Final Award").

**E.     Pravati Holds Multiple Judgments against Debtors.**

44.     The Arizona Superior Court confirmed the Second Amended Final Award on December 13, 2021.

45.     On May 2, 2022, the Arizona Superior Court entered judgment in favor of Pravati on the Second Amended Final Award for $350,424.80 plus continuing interest (the "Conversion Judgment").

46.     In one frivolous lawsuit that Randolph had commenced against Pravati, its fund manager, certain individual employees, investors, and others before the United States District Court, District of Arizona in Case No. CV-21-00713, Pravati as the successful party obtained a judgment for payment of its legal fees incurred in the amount of $32,128.00 and costs of $96.00 (the "District Court Judgment").

47.     In the second frivolous lawsuit that Randolph had commenced against Pravati, its fund manager, certain individual employees, investors, and others before the Arizona Superior Court in and for Maricopa County in Case No. CV2021-006612, Pravati as the successful party obtained a judgment for payment of its legal fees incurred in the amount of $19,723.01 and costs of $378.08 (the "Superior Court Judgment").

AFDOCS:26549994.1

**F.**      **Pravati Also Has Perfected Judgment Liens.**

48.      The District Court Judgment was registered in the State of Illinois on June 7, 2022.

49.      On July 7, 2022, Pravati recorded its registered District Court Judgment with the Cook County Clerk's Office, Illinois.

50.      Pravati registered its Conversion Judgment in the State of Illinois on August 12, 2022.

51.      On August 18, 2022, Pravati recorded its registered Conversion Judgment with the Cook County Clerk's Office, Illinois.

**IV.**

**FIRST CLAIM FOR RELIEF**

**(Exception from Discharge for Fraud Under 11 U.S.C. §§ 523(a)(2)(A), 1328(a)(2))**

52.      Pravati realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this Complaint.

53.      Under Section 523(a)(2)(A), debts are not dischargeable if they are "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).  There are three separate grounds for a debt to be non-dischargeable: "false pretenses, false representation, and actual fraud." *In re Casali*, 517 B.R. 835, 841 (Bankr. N.D. Ill. 2014).

54.      Debtors knowingly made false representations and material misstatements and omissions to induce Pravati to enter into the Agreement and provide Debtors with tens of thousands of dollars in funding under false pretenses.  Consequently, the debt embodied in the Conversion Judgment is not dischargeable in bankruptcy.

55.     When Debtors entered into the Agreement with and obtained funding from Pravati, they promised to return the capital advance, plus interest and fees, if and when they generated revenues.

56.     The Agreement provides at § 5 that "Law Firm also understands, acknowledges and agrees that Law Firm shall not assign, dispose of, encumber, or pledge as security or otherwise all or any portion of the Proceeds or Collateral, or any other interest in any Case in the Portfolio of Cases or other Related Proceedings unless and until Pravati is first unconditionally and finally paid in full[.]"

57.     Nevertheless, despite having generated and collected hundreds of thousands of dollars in revenues after receiving funding, Debtors have paid nothing to Pravati.

58.     Upon information and belief, when Debtors entered into the Agreement with and obtained funding from Pravati, they never intended to satisfy their payment obligations under the Agreement and intended to escape their obligations through legal tactics, aggressive litigation, and other bad-faith tactics, as they have done with other creditors.

59.     Upon information and belief, when Debtors entered into the Agreement with and obtained funding from Pravati, Debtors intended to leave Pravati with recourse only against a shell legal entity, rather than Debtors individually, while transferring the collateral to an alter ego entity.

60.     In the Agreement, Debtors represented that "Firm will provide all cases as collateral constituting all fees, distributions, payments, proceeds, preferences and other benefits which Firm now is or may hereafter become entitled to receive."

61.     Furthermore, the Agreement provides at § 5 that "In the event Law Firm is engaged to represent or otherwise acquires any additional future Cases or Related Proceedings, Law Firm

AFDOCS:26549994.1

shall revise Schedule B to set forth each such newly acquired Cases or Related Proceedings and shall notify Pravati of the revisions to Schedule B in a timely manner." (Emphasis removed).

62.     Nonetheless, Debtors never intended to pay Pravati from their future cases, knowingly withheld cases from the case list included in the Agreement as Schedule B, and never updated Schedule B.

63.     Despite numerous representations in the initial funding application and Section 17(e) and (g) and Schedule D of the Agreement, at the time Debtors entered into the Agreement, Debtors owed taxes and other debts to governmental entities, including income taxes and unemployment insurance tax to the State of Illinois.  Furthermore, the Debtors had corresponding governmental and tax liens against them, including two income tax liens and two unemployment insurance tax liens placed against them by the State of Illinois.

64.     The Agreement provides at § 17(i) that "all financial disclosures made to Pravati are true, accurate, complete and fairly characterize the financial position of Law Firm."

65.     As discussed herein, Debtors' financial disclosures were untrue, inaccurate, and greatly mischaracterized the Debtors' financial position.

66.     Debtors deprived Pravati of the truth, and Pravati would not have funded Debtors if it had known the truth about Debtors.

67.     After the Agreement was executed, Debtors continued to fail to disclose: (1) cases, settlements, and payments to Pravati; (2) their true intent to not honor the Agreement; (3) their true intent to transfer their cases to a different entity; (4) their intent not to revise Schedule B of the Agreement to include future cases; (5) their intent not to make payments consistent with the Agreement; and (6) their assets, debts, and liens.

AFDOCS:26549994.1

68.     Debtors' misrepresentations painted a far more optimistic picture of their worthiness of funding and financial outlook, such that Pravati was induced to provide substantial funds to Debtors.

69.     By making these and other misrepresentations to Pravati—including, but not limited to, the representations regarding existing liens and encumbrances, the Debtors' tax compliance, the Debtors' assets, and the Debtors' intent to repay their obligations—Randolph fraudulently induced Pravati to provide tens of thousands of dollars in funding.

70.     Pravati reasonably relied on these misrepresentations by Debtors.

71.     Debtors knew that these misrepresentations were materially false and fraudulent when made, and made such misrepresentations to Pravati with the specific intent to induce Pravati to enter into the Agreement and pay tens of thousands of dollars to Debtors.

72.     These misrepresentations did, in fact, deceive Pravati and induced Pravati to fund Debtors, which resulted in the financial losses described herein.

73.     Pravati relied upon the misrepresentations of Debtors, and such reliance was actual and justifiable under the circumstances.

74.     But for these misrepresentations, Pravati would not have funded Debtors, and through Debtors' misrepresentations, Debtors caused Pravati to suffer damages.

75.     As a proximate result of Debtors' fraudulent conduct, Pravati has suffered damages, plus interests, costs, and fees, to be determined at trial.

76.     Moreover, in awarding the Conversion Judgment, the Arizona Superior Court already found that Pravati has suffered damages.

77.     Accordingly, the debt owed by Debtors to Pravati is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

AFDOCS:26549994.1

**V.**

**SECOND CLAIM FOR RELIEF**

**(Exception from Discharge for Fraud Under 11 U.S.C. §§ 523(a)(2)(B), 1328(a)(2))**

78.     Pravati realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this Complaint.

79.     Under Section 523(a)(2)(B), debts are not dischargeable if they are "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by...use of a statement in writing—(i) that is materially false; (ii) respective the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."  11 U.S.C. § 523(a)(2)(B).  "To prevail on a claim under this section, the creditor must prove that the debtor made a materially false written statement about his financial condition with the intent to deceive, and that the creditor reasonably relied on the statement." *In re Cohen*, 507 F.3d 610, 613 (7th Cir. 2007).

80.     The aforementioned representations listed in other sections of this Complaint were made in writing.

81.     The aforementioned representations—including, but not limited to, the representations regarding existing liens and encumbrances, the Debtors' tax compliance, the Debtors' assets, and the Debtors' intent to repay their obligations—listed in other sections of this Complaint were knowingly and materially false.

82.     Debtors intended to make or publish the aforementioned representations with intent to deceive Pravati.

AFDOCS:26549994.1

83.     Pravati relied upon the aforementioned representations of Debtors, and such

reliance was actual and justifiable under the circumstances.

84.     But for Debtors' aforementioned representations, Pravati would not have funded

Debtors as described herein, and through Debtors' aforementioned misrepresentations, Debtors

caused Pravati to suffer damages.

85.     As a proximate result of Debtors' fraudulent conduct, Pravati has suffered damages,

plus interests, costs, and fees, to be determined at trial.

86.     Moreover, in awarding the Conversion Judgment, the Arizona Superior Court

already found that Pravati has suffered damages.

87.     Accordingly, the debt owed by Randolph and the Firm to Pravati is

nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

## VI.

## RELIEF REQUESTED

**WHEREFORE**, Pravati prays for judgment as follows:

1.     **On the First and Second Claims for Relief:**

a.     That Debtors' debt to Pravati be deemed a debt "obtained by false pretenses,

a false representation, or actual fraud" within the purview of 11 U.S.C. § 523(a)(2);

b.     That Debtors' debt to Pravati is excepted from discharge under 11 U.S.C. §

523(c); and

c.     For pre-judgment interest on any amount recovered at the lawful rate in an

amount to be established according to proof at trial;

d.     For punitive damages; and

e.     For Pravati's attorneys' fees and costs.

- 14 -

AFDOCS:26549994.1

Dated: November 28, 2022

Respectfully submitted,

**ARENTFOX SCHIFF LLP**


By: */s/ Aram Ordubegian*

    Aram Ordubegian (*pro hac vice admitted*)
    Annie Y. Stoops (*pro hac vice admitted*)
    ArentFox Schiff LLP
    555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013
    Telephone: (213) 629-7400
    Facsimile: (213) 629-7401
    Email: aram.ordubegian@afslaw.com
    annie.stoops@afslaw.com

    J. Mark Fisher (ARDC No. 3121711)
    ArentFox Schiff LLP
    233 South Wacker Drive, Suite 7100
    Chicago, IL 60606 USA
    Telephone: (312) 258-5500
    Facsimile: (312) 258-5600
    Email: mark.fisher@afslaw.com

    Attorneys for Plaintiff Pravati SPV II, LLC

AFDOCS:26549994.1